## CHARLESTON.

THOMPSON, etc. v. NOWLIN, etc.

Submitted January 23, 1902. Decided March 29, 1902.

1. ATTORNEY'S LIEN—*Administration Assets.*

   If an attorney at law by virtue of his employment performs services for an administratrix in the prosecution of a claim due the estate, to be paid for out of the proceeds thereof, and another administrator is substituted in lieu of the first and after; wards receives such proceeds, such attorney is entitled to payment for such services thereform unless he has been otherwise paid therefor. (p. 349).

2. NON-RESIDENT ADMINISTRATOR—*General Creditor's Right.*

   A general creditor may maintain a suit in chancery against a non-resident administrator appointed in this State, who has failed to return the inventory and make settlement of his accounts as required by law, and who has squandered the estate and become insolvent and the sureties on his bond are proper parties to such suit. If in such suit the administrator confessed assets which he has converted to his own use, the plaintiff is entitled to a decree for his claim against such administrator individually and his sureties and a reference to a commissoner is unnecessary. (p. 350).

Appeal from Circuit Court, Summers County.

Bill by J. S. Thompson and A. F. Matthews against A. W. Nowlin and others. Decree for plaintiffs, and defendants appeal.

*Affirmed.*

MILLER & READ, for appellants.

W. R. THOMPSON and J. SPEED THOMPSON, for appellees.

DENT, PRESIDENT:

A. W. Nowlin, administrator of Wm. J. Gordon, deceased, Fidelity and Deposit Company, of Maryland, Charles Boze and James H. Miller, appeal from a decree of the circuit court of Summers County in favor of J. S. Thompson and A. F. Matthews.

This case appears to be one of dry technicalities indicative of the want of meritorious defence. The first objection urged is that the bill was filed in the name of J. S. Thompson for the use of A. F. Matthews. The court sustained the demurrer because thereof and permitted the filing of an amended bill in the name of J. S. Thompson and A. F. Matthews as plaintiffs. There is no error in this, as Thompson as assignor, is a necessary party to the suit, and Matthews by virtue of the assignment, had the right to bring the suit in his name or to join him in the suit as a plaintiff or a defendant and to make the original bill complete. It was only necessary to make Matthews a party thereto. Defendants insist that the original bill should have been dismissed as J. S. Thompson had parted with his entire interest in the matter. This is not true, for he was still responsible for the claim if Matthews failed to make it from the defendants, and he is a proper party to the suit. *Kellam* v. *Sayer,* 30 W. Va. 198; *Grove* v. *Judge,* 24 W. Va. 294.

The second objection is because the court refused to quash the order of publication as it used the words "now resident" instead of "non-resident," being clearly a typographical error self-corrective and easily understood by a person of less than ordinary sense, and no legal learning, and therefore could mislead no one of ordinary intelligence.

The third objection is that the cause was prematurely heard at the May term. This objection should have been urged at that time, not now. The defendants Nowlin, Fidelity and De-

posit Company appeared at that time and moved to quash the order of publication, which motion being overruled, two of the defendants demurred to the bill and no further action was taken in the case until the 7th day of September, 1899. Whatever was done at the May term was at the instance of the defendants and of this they have no right to complain.

The fourth and fifth objections are passed for the present.

The sixth objection is because the court failed to give defendant Miller a rule to answer after overruling his demurrer. This was afterwards corrected by giving him such rule and he answered.

The seventh is passed.

Eighth: Because Ida Welch, the distributee, was not a party. This was unnecessary because she was not interested in this litigation.

The ninth, tenth, eleventh and twelfth are passed.

The thirteenth, because the suit was abated as to Eliza A. Moorman, deceased. She was not a necessary party, nor was her personal representative, as her interest was entirely destroyed when she was removed as administratrix and another substituted for her. The fourth, fifth, seventh, ninth, tenth, eleventh, twelfth fourteenth, fifteenth, sixteenth, seventeenth and eighteenth may all be considered together, as the answer to some few of them satisfies all the rest.

The following is a statement of the undisputed facts: W. J. Gordon was accidentally killed while in the employ of the C. & O. Ry. Co. Eliza A. Moorman with whom he lived and by whom he was raised, he having neither father or mother or other near kin except his sister, known as Ida Welch, who at that time was an infant not under guardianship, believing that Gordon's death was caused by negligence, applied for and was appointed administratrix of his estate. She thereupon employed J. S. Thompson, an attorney at law to prosecute the claim against the C. & O. Ry. Co. agreeing with him in writing if he should get a settlement out of said company without suit, he was to have fifteen per cent. of the amount realized, but if he had to bring suit he was to have one-third of the amount collected.

Mr. Thompson, without being able to effect a settlement, instituted suit and was vigorously prosecuting the same with hopes of a compromise of two thousand five hundred dollars when A.

W. Nowlin, an attorney from Lynchburg, Virginia, who had in some unrevealed way obtained knowledge of the claim and secured from Ida Welch, then an infant, a writing authorizing him as her attorney to prosecute or compromise such claim, appeared and secured the removal of Mrs. Moorman as the administratrix and had himself appointed in her stead with the Fidelity & Deposit Company of Maryland, James H. Miller and Charles Boze as his sureties. It is charged in the bill and not denied in the answer that Nowlin was acting in concert with and under the advice of an agent of the C. & O. Ry. Co., with whom he effected a compromise. His conduct in this matter seems to fully sustain this charge and to justify an inference that he was not looking after the interest of Ida Welch, whose guardian he had become. He claims to have been protecting her interest against her grandmother. The court would have done this on application without the necessity of the removal of the grandmother as such administratrix. The only interest he seems to have protected was his own and the interest of the company. At the time of his motion to remove Mrs. Moorman as such administratrix he was fully informed as to the suit brought by the plaintiff and the contract between him and the administratrix, and said he did not want to interfere therewith. The plaintiff also tried to persuade him not to accept a compromise of one thousand five hundred dollars which had already been offered as the company would pay a much larger sum, or it could be recovered in the suit then pending. But he with undue haste proceeded forthwith to compromise the same, which appears to bear out the charge that he was acting in the interest of the company, although ostensibly acting for the infant to protect her from wrong threatened by her grandmother. The grandmother was legally appointed administratrix. She was the nearest of kin at that time competent to accept the appointment as Ida Welch was an infant and could not be appointed. Yet because she was appointed within thirty days she was removed. The fact that she was appointed within thirty days does not make her appointment invalid. But if the distributee being of age had applied for the appointment for herself she could have been substituted if a resident of the State and not otherwise disqualified. *Bridgman* v. *Bridgman,* 30 W. Va. 212. She being the lawful administratrix she had the right to charge the fund to be recovered thereby with the necessary expenses of

the litigation therefor, including lawyer's fees, unless such fees were shown to be exorbitant and unjust. In this case Nowlin could not claim the plaintiff's charge to be exorbitant, for he bargained with the infant for the same fee for merely going through the form of a compromise. An administrator has the right to charge the estate with contingent fees. 11 Am. & En. En. Law, (2d Ed.) 1251; *In Re McFarland,* 4 Pa. St. 149; *Baker* v. *Baker,* 87 Va. 180. The present doctrine of the law as to administrators is that a subsequent administrator succeeds to all the powers and duties of his predecessor and takes the assets subject to all the obligations incurred in relation therto. In short, they are but successive trustees. If they take the trust and fund, they take them subject to all the legal obligations which may attach thereto. 11 Am. & En. En. Law (2d Ed.) 1331. An administrator not having settled his accounts nor paid the debts of the estate, but squandered the funds and being insolvent may be sued in chancery, and it is proper in such suit, to save a multiplicity of suits to join his sureties. *Hale* v. *White,* 47 W. Va. 700; *Beverly* v. *Rhodes,* 86 Va. 415. Plaintiff had the right to sue in equity because the administrator had failed to make the settlements required by law, had wasted the assets and become insolvent, making a resort to his sureties necessary, and having the right to sue, upon the confession of assets sufficient to pay the debt demanded, an order of reference was wholly unnecessary, but decree could go at once. *Hale* v. *White,* cited, 704, 705. This answers objections, fourth, as to the remedy at law; fifth, as to the necessity of proving claim before reference; sixth, as to the failure to give defendant a rule to answer prior to reference and report of commissioner; seventh, as to notice of convention of creditors not properly published; ninth and tenth, as to exceptions to the depositions; eleventh and twelfth, as to the reports of the commissioner; fourteenth, fifteenth and sixteenth, as to the liability of Nowlin for plaintiff's debt; and seventeenth, as to the liability of the sureties. With regard to the eighteenth, in so far as it relates to the decree against Charles Boze being erroneous on account of his not having appeared or been served with process, it is only necessary to say that his remedy is not by appeal, but by motion in the circuit court, and in so far as it relates to the personal decree against Nowlin and his sureties, it is perfectly proper, as it appears he had assets which he applied to his in-

dividual uses, and therefore he is personally liable and his sureties on his bond likewise. This is why they signed it. The order of reference, depositions and convention of creditors, were wholly unnecessary, as the written papers, pleadings and exhibits, fully establish liability, and there were no other creditors. This controversy resolves itself into a question as to which of two attorneys should have the third of the money obtained for the death of Wm. J. Gordon, as a fee for services rendered. Plaintiff had an honest, open and fair contract with the legal administratrix. Defendant Nowlin, fully aware of this, proceeds to have the administratrix unjustly removed and himself appointed in her place. Then without consulting with the plaintiff, he proceeds, with full knowledge of plaintiff's rights and services, to compromise with the C. & O. Ry. Co., and obtains the money, removes it from the jurisdiction of the State, and thus defrauds plaintiff of his fees when it was his duty to have protected him. It is said there is honor even among thieves, and if such be the case there is no good reason why it should not exist among lawyers, the true conservators of honor. They certainly should not stoop to practices as against each other worthy only of the shyster. And when such practices are resorted to the courts should mete out to the offender even handed justice. He should not be permitted to escape with his ill gotten gains beyond their jurisdiction. A high standard of honor should be zealously preserved among the practitioners, and the same should be required of non-resident attorneys who as a matter of comity are permitted to enjoy equal rights with them. Had the defendant Nowlin properly discharged his duties as administrator no cause for this suit would have ever arisen. It was his wrong doing that occasioned it, and the court cannot be deceived by his mock pretense of protecting an infant. As the pleadings show, plaintiff had the same offer of compromise that defendant Nowlin accepted, and before the money could have been paid over to the then acting administratrix on the mere suggestion that it was necessary the court would have required of her a sufficient bond. So the railroad company and the infant would both have been protected without further interference on the part of defendant Nowlin, who probably procured the contract from the infant by representing that her grandmother was about to defraud her as claimed in his answer. Such pretensions, while they may deceive the un-

wary, have no weight with a court of equity, which has a quick eye to detect hidden motives from outward conduct. What secret understanding defendant Nowlin may have had with the company's agent must remain a tale untold, as unnecessary to a decision of this case, but it is plain that the only other thing he accomplished as the result of his interference was to take the fee for which plaintiff had bargained and to which the latter was fairly entitled, and convert it to his own uses. This the decree of the circuit court compels him to restore and it is accordingly affirmed.

*Affirmed.*